UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:12-CV-541-R

MARCUS PAUL RIGNEY                                                                                   PLAINTIFF

V.

ELLEN M. HESEN, *et al.*,                                                                           DEFENDANTS

**MEMORANDUM OPINION**

      This matter is before the Court upon Defendants' Motion to Dismiss. (DN 10.) Plaintiff has responded, (DN 14), and Defendants have replied, (DN 15). This matter is ripe for adjudication. For the following reasons, Defendants' Motion to Dismiss (DN 10) is GRANTED.

**BACKGROUND**

      Plaintiff, Marcus Rigney, is the father of two minor children who are central to this lawsuit, which he brings against both former and current officers and employees of Kentucky's Cabinet for Health and Family Services ("the Cabinet") Department for Community Based Services ("DCBS"). In his Complaint, Rigney alleges that "[t]he supervisors of the [Cabinet's] Salt River Trails [sic] Region have allowed an improperly or undertrained social worker to constantly violate the Kentucky State Statutes and the Kentucky Administrative Rule under which the Cabinet is to work without proper hearings." (Pl.'s Compl. ¶ 1, DN 1.)

      The underlying facts follow. In June 2009, after she moved to another county with the children, Plaintiff lodged allegations of drug use against his children's mother, which led to a dependency, neglect, or abuse petition being filed with the Bullitt Family Court. On June 25,

2009, the court granted Rigney emergency custody.[1] However, on July 15, 2009, upon motion by the children's guardian ad litem, the court awarded temporary custody to the Cabinet. After a formal hearing on the neglect petition, the court granted custody to the Cabinet, which then placed the children in foster care. *Rigney v. Bartholomew*, 2012 WL 3637218, *1 (Ky. Aug. 23, 2012).[2] Rigney's parents requested that the children be placed with them in lieu of foster care; however, "Ms. Pridemore[3] testified she didn't trust them and the children remained in foster care." (Pl.'s Compl. ¶ 15.)

While the proceedings progressed in family court, Rigney alleges that Pridemore would "thwart[]" his efforts to comply with the family court's orders. (*Id.* ¶ 18.) As an example, Rigney alleges that: "when he had to work out of town, Ms. Pridemore would call and demand he do a drug test right then. He would ask where to go and she would not say anything. Later she would tell the court he had refused." (*Id.*) Pridemore also allegedly "told another worker from a different county[] that if the biological Mother could just get out of jail and get off drugs that she would be the better option than any of the three Rigneys." (*Id.* ¶ 19.)

"In 2010, the mother was arrested for drug trafficking and jailed, so the Cabinet began working with [Rigney], who was allowed visitation with the children on a regular basis." *Rigney*, 2012 WL 3637218 at *1. In August 2011, Rigney's parents were also granted visitation with the children. *Id.* However, in November 2011 after discovering that "the daughter had an injury on

---

[1] Although Rigney and the children's mother were not married, the two had previously lived together and shared custody of the children.

[2] In examining this motion to dismiss, the Court has taken judicial notice of certain court documents filed in the state proceedings. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (district courts may take judicial notice of reliable public documents in examining a motion to dismiss); *Young v. U.S. Dep't of Agriculture*, 2011 WL 864977, *1 n.2 (W. D. Ky. Mar. 11, 2011) (taking judicial notice of documents filed in a plaintiff's prior lawsuit).

[3] Sarah Pridemore is a social worker for the Cabinet's Salt River Trail Region in Bullitt County.

2

her butt",[4] the Cabinet filled out an emergency custody order affidavit. (Pl.'s Compl. ¶ 21.) After what the trial court called a "temporary removal hearing," the court suspended both Rigney and his parents' visitation with the children. *Rigney*, 2012 WL 3637218 at *1. "After this hearing, Plaintiff was again not permitted to see or speak with his children and at the time did not know what the allegations were all about." (Pl.'s Compl. ¶ 23.)

Thereafter, "Rigney and his parents filed a petition for a writ of mandamus with the [Kentucky] Court of Appeals requesting that the order discontinuing the father's contact with the children be stricken, that all petitions, summonses, and information as to the grandparents be stricken, and that the Cabinet be required to turn over information to the proper authorities for further investigation." *Rigney*, 2012 WL 3637218 at *2. As he does in the instant lawsuit, Rigney argued that the procedure used by the Cabinet—a temporary removal hearing—was inappropriate because the Cabinet already had custody of his children and amounted to a denial of due process. After "[t]he Court of Appeals denied the petition in a short order", Rigney appealed to the Kentucky Supreme Court. *Id.* After observing that Rigney "continues to pursue only the merits of his claim and does not discuss whether a writ is even available in his circumstances" and noting that it would "not conjure up a showing of the prerequisites where a petitioner has failed to do so", the court affirmed the decision in an August 23, 2012, opinion. This lawsuit followed one week later.

In the instant litigation, Rigney brings claims against former Acting Secretary for the Cabinet, Ellen Hesen; former Commissioner of the DCBS, Patricia Wilson; Administrator for the Salt River Trail Service Region of the DCBS ("Salt River Region"), Nelson Knight; Clinical Associate for the Salt River Region, DeDe Sullivan; Supervisor in the Salt River Region's

---

[4] The Kentucky Supreme Court describes this injury as a hand-shaped bruise. *Rigney*, 2012 WL 3637218 at *1.

Family Services Office, Rachel Cochran; and Salt River Region Social Worker, Sarah Pridemore. (Pl.'s Compl. ¶¶ 5-10.) Rigney brings claims against all defendants in their official capacities and against Pridemore "personally and in her official Capacity." (Caption of Pl.'s Compl.) Specifically, Rigney alleges that Pridemore:

> made the decision not to allow any contact between the father and his children. She gave the information to the Cabinet attorney to stop grandparent visitation without a hearing thus causing Plaintiff's family to have no contact with his children. Her conduct continually violates federally protected procedural due process rights of the Father and his fundamental right to choose for his children. She used her personal opinion to deny family placement of the children violating the Cabinet's own administrative rules.

(Pl.'s Compl. ¶ 10.)

Rigney asserts that, through certain alleged procedural failures by the Cabinet and the family court, the defendants have violated his due process rights under both the Fifth and Fourteenth amendments.[5] Specifically, Rigney alleges that, prior to the Court's award of temporary custody to the Cabinet, "no petition [was] filed against the Father and on [sic] summons issued to the Father in violation of KRS 620.070." (*Id.* ¶ 13.) Rigney further alleges that, contrary to state law, the court held a formal abuse and neglect hearing more than 45 days later. (*Id.* ¶ 13.) Rigney also complains that the Cabinet's motion for emergency custody in November 2011 "was not appropriate as the Cabinet already had the custody of the children." (*Id.* ¶ 21.) Finally, Rigney alleges that the Cabinet is "trying to terminate Plaintiff's rights to his children again without due process of law." (*Id.* ¶ 25.)

In his prayer for relief, Rigney requests the Court to issue an injunction against the Salt River Trail Region of the DCBS prohibiting them "from discussing, writing any documents

---

[5] As Defendants point out, and Rigney does not dispute, "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Thus, Rigney's invocation of the Fifth Amendment is redundant to his claims under the Fourteenth Amendment.

about or entering any twist report about the Plaintiff and that the children be immediately returned to him." (*Id.* ¶ 26.) Later, in his response to Defendants' motions, Rigney clarifies that he wants the Court to order that his state case be transferred from Bullitt to Jefferson County. (Pl.'s Resp., 7, DN 14-1.) Rigney also seeks monetary compensation against Pridemore "for the costs he has expended in trying to obtain his children," (Pl.'s Compl. ¶ 1), including attorney's fees. (*Id.* ¶ 26.)

Defendants have filed a motion to dismiss Rigney's claims against them in whole or in part. First, Defendants contend that the bulk of Rigney's claims are barred by the relevant statute of limitations. Second, Defendants move for dismissal of Rigney's claims against Sarah Pridemore under Federal Rule of Civil Procedure 12(b)(6), arguing that Rigney's allegations against her fail to meet the Rules' facial plausibility requirement and that Pridemore is protected from suit by both absolute and qualified immunity. Third, Defendants argue that jurisdiction over Rigney's claims are barred by the Rooker-Feldman doctrine or the domestic relations exception to federal jurisdiction. Fourth, Defendants argue that in the event the Court finds jurisdiction is proper, it should abstain from exercising that jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971). Finally, Defendants argue that Rigney's Complaint is barred in part by the doctrine of sovereign immunity and the Eleventh Amendment.

## STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and draw

all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). And although a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Rather, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," *Am. Telecom Co. v. Leb.*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.*, 491 F.3d

6

320, 330 (6th Cir. 2007). Where there is a factual attack, the Court must "weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.* "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.*, 368 F.3d 569 (6th Cir. 2004).

## DISCUSSION

Because subject matter jurisdiction is a "threshold issue," *Am. Telecom Co.*, 501 F.3d at 537, the Court first will address Defendants' arguments that it lacks subject matter jurisdiction. Defendants argue that Rigney's demand that his children be restored to him is barred by the *Rooker-Feldman* doctrine, which deprives federal district courts of subject matter jurisdiction over claims seeking review of cases decided by state courts. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). In other words, this Court lacks subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Defendants contend that Rigney is such a plaintiff, losing temporary custody after a state trial court's decision and again when the Kentucky Court of Appeals and the Supreme Court of Kentucky denied his petition for a Writ of Mandamus.

In support of their argument, Defendants note that the Sixth Circuit previously held that the *Rooker-Feldman* doctrine applies to interlocutory orders and to orders of lower state courts. *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458 (6th Cir. 2003). However that decision, rendered two years before the Supreme Court's decision in *Exxon Mobil* clarified that the doctrine had "narrow" and "limited" application, has since been called into question. *See*

7

*Nicholson v. Shafe*, 558 F.3d 1266, 1276-77 (11th Cir. 2009). In fact, the Sixth Circuit itself has noted that "[a]fter *Exxon Mobil*, it remains an open question in this circuit whether *Rooker-Feldman* applies where, as here, the plaintiff files suit while the state case is still pending on appeal." *Shafizadeh v. Bowles*, 476 Fed. App'x 71, 72 (6th Cir. 2012). Because the Sixth Circuit has not decided the specific issue, the Court declines to apply the *Rooker-Feldman* doctrine in this case.

The Court does, however, find that the domestic relations exception warrants dismissal of Plaintiff's Complaint. Generally, federal courts have no jurisdiction over domestic relations matters. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Catz v. Chalker*, 142 F.3d 279, 290 (6th Cir. 1998), *abrogated on other grounds by Exxon Mobil*, 544 U.S. at 284. Rather, state courts have exclusive jurisdiction over these matters. See *Ankenbrandt* at 703-04. Rigney contends that the domestic relations exception does not apply because (1) "[t]his is not a divorce" and (2) he is "not asking the Court to review or decide the substantive issue of neglect or abuse." (Pl.'s Resp. at 8.) As to his first argument, Rigney fails to explain why the exception would be so limited. The Supreme Court has clearly stated that the exception "divests the federal courts of power to issue divorce, alimony, and *child custody decrees*." *Ankenbrandt* at 703 (emphasis added). Secondly, Rigney requests that the Court issue an injunction requiring the return of his children, which is essentially the same as issuing a child custody decree. *See Danforth v. Celebrezze*, 76 Fed. App'x 615, 616 (6th Cir. 2003) ("[F]ederal courts lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relations issues."). That Rigney styles his claim as civil rights violations does not change this calculus. See *Lunsford v. Ky. Cabinet for Health & Family Svcs.*, 2012 WL 2880577, *3 (E.D. Ky. July 13, 2012) (citing *Partridge v. State of Ohio*, 79 Fed. App'x 844, 845 (6th Cir. 2003)).

Finally, the Court finds that the *Younger* abstention doctrine applies to Rigney's claims. Under *Younger* abstention, a federal court may not grant "injunctive or declaratory relief that would interfere with state judicial proceedings pending at the time that a federal complaint is filed." *Shafizadeh*, 476 Fed. App'x at 73 (citing *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008)). Abstention in favor of state court proceedings is appropriate where there exists: (1) an ongoing state proceeding; (2) an important state interest; and (3) an adequate opportunity in the state judicial proceedings to raise constitutional challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432; *Tindall v. Wayne Cnty. Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001).

A review of Rigney's complaint makes clear that the Court must abstain from adjudicating his claims. First, Rigney is a party in a state court child custody proceeding that is pending before the Bullitt Family Court. Second, the proceeding involves an important state interest, namely, child custody matters. *See Meyers v. Franklin Cnty. Court of Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001) ("Indeed, cases out of the Supreme Court and this Court make it clear that abstention is generally appropriate in matters of family relations such as child custody."). Rigney asks this Court to interfere with this important, ongoing state proceeding in several ways: by issuing an injunction that would require the return of Rigney's children to him, despite a state court order to the contrary; by barring social workers with the Salt River Trail of the DCBS from working on Rigney's case; and by ordering a transfer of jurisdiction to the Jefferson Family Court. Rigney asks the Court to do so without citing any case law or making any coherent arguments as to why the Court should exercise such extraordinary power to grant the relief he seeks, if indeed, it would even have such power. Finally, Rigney offers no argument that the state appellate process would not give him adequate opportunity to air his grievances

9

concerning the Cabinet and Bullitt Family Court's alleged failure to follow state-prescribed procedures. Thus, even if this Court were to have jurisdiction over Rigney's claims, abstention is appropriate. Rigney's claims must be dismissed. *See Shafizadeh*, 476 Fed. App'x at 73 (quoting *Beltran v. California,* 871 F.2d 777, 782 (9th Cir. 1988) ("*Younger* abstention requires *dismissal* of the federal action")).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, (DN 10), is GRANTED. An appropriate order shall issue.

Date:

CC: Counsel